UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-21335-ALTMAN/Reid

**ELENA ROMERO LEON**,

    *Plaintiff*,

v.

**WAL-MART STORES EAST LP**,

    *Defendant*.
_____/

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

On January 30, 2023, our Plaintiffs, Elena Romero Leon and Carlos Seixas (a married couple), sued Walmart, Inc., in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, asserting one count of negligence (by Ms. Romero Leon) and another for loss of consortium (by Mr. Seixas).[1] *See generally* Complaint [ECF No. 1-1]. On March 6, 2023, while still in state court, the Plaintiffs filed an Amended Complaint against the proper Defendant, Wal-Mart Stores East, LP ("Wal-Mart" or "Walmart")—again asserting a claim for negligence and a derivative claim for loss of consortium. *See generally* Amended Complaint [ECF No. 1-2]. Wal-Mart then removed this case to federal court on April 7, 2023, under the provisions of 28 U.S.C. §§ 1332, 1441, and 1446(b)(1). *See* Notice of Removal [ECF No. 1] at 1.

---

[1] A "claim for loss of consortium, although deemed a separate claim under Florida law, is considered a derivative claim." *Goldberg v. R.J. Reynolds Tobacco Co.*, 2008 WL 11333677, at *1 n.1 (S.D. Fla. Nov. 12, 2008) (Johnson, Mag. J.). As a derivative claim, "loss of consortium is . . . wholly dependent on the physically injured spouse's ability to recover." *In re Engle Cases*, 767 F.3d 1082, 1120 n.38 (11th Cir. 2014) (cleaned up & quoting *Faulkner v. Allstate Ins. Co.*, 367 So. 2d 214, 217 (Fla. 1979)); *see also Bombalier v. Lifemark Hosp. of Fla.*, 661 So. 2d 849, 852 (Fla. 3d DCA 1995) ("The spouse with the loss of consortium claim has an interest in the litigation only in privity, thus if the injured spouse's claim is defeated, the derivative claims of the other spouse for loss of consortium also falls.").

After some litigation (and without filing a motion to dismiss), Wal-Mart moved for summary judgment. *See generally* Defendant's Motion for Summary Judgment ("MSJ") [ECF No. 25]. The Plaintiffs responded to the MSJ, *see generally* Plaintiffs' Opposition to Wal-Mart's Motion for Summary Judgment (the "Response") [ECF No. 38], and Wal-Mart replied, *see generally* Defendant's Reply to Plaintiffs' Response in Opposition to Motion for Summary Judgment (the "Reply") [ECF No. 39]. After careful review—and taking the evidence in the light most favorable to the Plaintiffs—we now deny summary judgment and proceed to trial.

## THE FACTS[2]

On May 15, 2022, Ms. Romero Leon "was a business invitee" at Wal-Mart "when she slipped on water on the ground causing her to sustain serious injuries." Amended Complaint ¶¶ 4–5. On that day, Ms. Romero Leon and her husband, Mr. Seixas, were walking together through Wal-Mart's produce section "looking for the onions, tomatoes, green leaves, and the water[.]" Deposition of Elena Romero Leon ("Romero Leon Dep.") [ECF No. 26-1] at 37:7–38:17. While in the produce section, Ms. Romero Leon suddenly slipped and fell on a "dirty," "very slimy," and "transparent" substance on the ground. *Id.* at 38:25–39:7. Ms. Romero Leon doesn't remember whether she "fell backwards

---

[2] "The facts are described in the light most favorable to [the non-moving party]." *Plott v. NCL Am., LLC*, 786 F. App'x 199, 201 n.2 (11th Cir. 2019); *see also Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) ("[F]or summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the [non-movant]."). We accept these facts for summary-judgment purposes *only* and recognize that "[t]hey may not be the actual facts that could be established through live testimony at trial." *Snac Lite, LLC v. Nuts 'N More, LLC*, 2016 WL 6778268, at *1 n.1 (N.D. Ala. Nov. 16, 2016); *see also Cox Adm'r US Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion may not be the actual facts. They are, however, the facts for present purposes[.]" (cleaned up)). In considering Wal-Mart's MSJ, then, we describe the facts in the light most favorable to the Plaintiffs and rely on Wal-Mart's Statement of Undisputed Material Facts ("Wal-Mart SOF") [ECF No. 27] *only* where the Plaintiffs have failed to genuinely dispute a proposition Wal-Mart has asserted there, *see* S.D. FLA. L.R. 56.1(b) ("All material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement provided that the Court finds that the movant's statement is supported by evidence in the record.").

or sideways," *id.* at 38:24, but she does remember "los[ing] consciousness twice," "regain[ing] consciousness while on the ground," and being "wet all over," *id.* at 42:4–11, 45:15; *see also id.* at 39:1–3 ("I do remember, afterwards, that all of my clothes on the back was all wet, my pants, my interior clothes, my . . . blouse, even my [ ] head, my hair was wet."). Mr. Seixas was "walking ahead of" his wife but remembers hearing her "scream[ ]" and then seeing her "on the floor." Deposition of Carlos Seixas ("Seixas Dep.") [ECF No. 27-2] at 40:18–23. He claims that he then observed a "puddle" near where Ms. Romero Leon fell. *See id.* at 40:24–41:6 ("Q: And when you saw her on the floor, can you describe for me what you saw? A: I noticed that she was unconscious. I got scared and I saw that she moved but she fell and there was like puddle of water there and she complained of—I noticed that she was complaining of pain and she was unconscious[.]").

As she was "laying on the ground, right after the fall," Ms. Romero Leon began to experience pain in her "spine" and "coccyx." *Id.* at 47:21–22. The "next day," her "neck started hurting[.]" *Id.* at 47:22–23. In the following days, she "started getting stronger migraines instead of lasting one day, now they started lasting more [than] two days . . . . And my migraines got [ ] worse after my fall." *Id.* at 48:1–4. "[E]ven today," she says, "my coccyx, whenever I sit down or I stand up, it hurts me and I feel like it moves." *Id.* at 47:14–16. Ms. Romero Leon also avers that she's begun to experience incontinence since her accident at Wal-Mart. *See id.* at 24:3–14 ("Q: Do you relate any gastrointestinal issues following the subject incident at Wal-Mart to what happened to you at Wal-Mart? A: Yes. My sphincter, meaning the one that holds the poop, sometimes I feel that I lose control over that. And when I check on myself, then I see some poop. But that could be related to the injury to my coccyx, or could also be related to the medicine that I am taking because I am also taking the medicine for the pain. Q: Okay. Have you ever experienced sphincter issues prior to May 15th, 2021—or excuse me, 2022? A: No. But ever since the accident, yes[.]").

3

Since the incident, Ms. Romero Leon has seen a variety of doctors, including a "neurologist" and a "chiropractor." *Id.* at 55:12–16. She's had "surgery to [her] neck" and "injections" in her coccyx and her neck. *Id.* at 56:17–19, 57:1–3; *see also id.* at 24:18–25 ("Q: Any other injuries or issues that you claim are a result of the subject incident that happened at Wal-Mart? A: Yes. And I already had surgery. I had an operation of this. It was my disk [sic]. They had to take the disc out . . . . And I still have pain from this[.]"). Ms. Romero Leon alleges that she continues to experience discomfort stemming from the incident at Wal-Mart. *See id.* at 57:13–18 ("The migraines don't go away now. I constantly have the migraines. I go to bed with a migraine and I wake up with a migraine. My neck, I am doing better, and my spine. There is a lot of things that I cannot do because of my—my spine. For example, I cannot bend down, and there's many things that I cannot do."); *id.* at 58:12–18 ("Due to the pain and the migraines, because, for example, my husband usually likes to go out fishing, and I will go with him, and I would just sit down in a chair to watch him. I can no longer do that because then I start feeling the migraines, the pain on my spine, the pain on my coccyx. And beside that, it's very uncomfortable, also, because I have to be wearing diapers.").

## THE LAW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *Ibid.*

At summary judgment, the moving party bears the initial burden of "showing the absence of a genuine issue as to any material fact." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."). Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to "come forward with specific facts showing there is a genuine issue for trial." *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3); *see also Green v. Northport*, 599 F. App'x 894, 895 (11th Cir. 2015) ("The district court could consider the record as a whole to determine the undisputed facts on summary judgment."). In any event, on summary judgment, the Court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001).

In sum, then, if there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial. *Whelan v. Royal Caribbean Cruises Ltd.*, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (Ungaro, J.). On the other hand, the Court must grant summary judgment if a party "has failed to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323; *see also Lima v. Fla. Dep't of Child. & Families*, 627 F. App'x 782, 785–86 (11th Cir. 2015) ("If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994))).

**ANALYSIS**

Wal-Mart moves for summary judgment on the ground that Ms. Romero Leon "can present no evidence that Wal-Mart had actual or constructive notice of the substance on the floor before her fall, and therefore, [she] cannot establish [that] Wal-Mart breached a duty." MSJ at 1. Wal-Mart's main argument for this position is that "the objective video evidence supports that the alleged substance (i.e., water droplets) was on the floor for no more than a minute." *Id.* at 9. According to Wal-Mart, the "droplets" accumulated on the floor "a mere minute before the incident," when another customer "handl[ed] scallions taken from the wet produce section of the store, directly above the area where [Ms. Romero Leon] would slip and fall[.]" *Ibid.* In Wal-Mart's view, therefore, it could not have had notice of the water on the floor, because Ms. Romero Leon "fails to prove that Wal-Mart *actually* knew of the dangerous condition," *id.* at 7 (emphasis added), and a "minute . . . is not enough time to charge Wal-Mart with *constructive* notice," *id.* at 9 (emphasis added).

The Plaintiffs counter that they "do[ ] not charge Wal-Mart with constructive notice based on the length of time the water had been on the floor . . . [t]hough we believe the record contains sufficient evidence to satisfy this standard . . . . Instead, Plaintiff[s] charge[ ] Wal-Mart with constructive notice based on the fact that this dangerous 'condition occurred with regularity and was therefore foreseeable [under] Fla. Stat. § 768.0755(1).'" Response at 2–3 & n.1 (quoting *Torres v. Wal-Mart Stores E., L.P.*, 555 F. Supp. 3d 1276, 1278–79 (S.D. Fla. 2021) (Altman J.)). Having reviewed the evidence, we agree with the Plaintiffs: A reasonable jury *could* find that Wal-Mart had constructive notice because the problem of water dripping from the wet wall (and from produce being lifted off the wet wall) occurred with regularity—and was therefore foreseeable.

Under Florida law, a person who "slips and falls on a transitory foreign substance in a business establishment . . . must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it." FLA. STAT. § 768.0755(1). A

6

"transitory foreign substance" refers "generally to any liquid or solid substance, item or object located where it does not belong." *Owens v. Publix Supermarkets, Inc.*, 802 So. 2d 315, 317 (Fla. 2001). A slip-and-fall plaintiff may prove constructive knowledge through "circumstantial evidence," showing *either* that "[t]he dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition" *or* that "[t]he condition occurred with regularity and was therefore foreseeable." FLA. STAT. § 768.0755(1). The Defendant is therefore just wrong to insist that "Walmart cannot be held liable under a theory of constructive notice without evidence pointing to the length of time the substance existed on the floor before [the] incident." MSJ at 7.[3]

In any event, the Plaintiffs proceed on a different theory, hoping to establish constructive notice by showing that Wal-Mart "was aware that water on the floor constitutes a slipping hazard" and "knew that customers would remove wet produce from the wet wall and drip water on the floor on their way to grabbing a produce bag from the nearest dispenser." Response at 5. "Because Wal-Mart knew that this was a problem," the Plaintiffs argue, "its policy was to place three floor mats directly in front of the wet wall (and other areas of the store where water would drip, such as the ice cooler and flower stand) . . . . And on the day of the fall, there was only a single mat that left two thirds of the floor in front of the wet wall exposed to water, including the floor in front of the

---

[3] Contra Wal-Mart's position, there's *no evidence* that the water that caused our Plaintiff to slip "was on the floor for no more than a minute." MSJ at 9. Wal-Mart tells us that the "store's video shows the events leading up to [Ms. Romero Leon's] fall and . . . . shows the incident occurring at 04:26:17. Merely 57 seconds prior, at approximately 04:24:17 to 04:25:37, a customer is observed handling scallions taken from the wet produce section of the store, directly above the area where [Ms. Romero Leon] would slip and fall moments later." *Ibid.* But we've reviewed Wal-Mart's closed-circuit television ("CCTV") footage, and we cannot say for certain that it was the customer "handling scallions" who created the allegedly dangerous condition. In fact, the footage shows several customers handling produce from the wet wall in the hour or so before Ms. Romero Leon's accident. *See, e.g.*, CCTV Footage [ECF No. 28] at 12:57–13:18 (showing a customer carrying what looks like unbagged produce from the wet wall to the bag dispenser across the aisle more than 30 minutes before Ms. Romero Leon fell). We therefore think a reasonable jury *could* find that the water was on the floor for *at least* half an hour.

7

scallions." *Id.* at 5–6. The CCTV footage indeed shows that, when Ms. Romero Leon walked down the produce aisle at 4:26 P.M. on May 15, 2022, most of the floor in front of the wet wall—including the area where Ms. Romero Leon fell—was *not* covered by mats. *See* CCTV Footage at 51:15.

And deposition testimony from two of Wal-Mart's employees indicates that Wal-Mart knew water could drip onto the floor near the wet wall—and that water on the floor near the wet wall poses a slipping hazard. For example, Vanessa Bryant (Wal-Mart's assistant manager, who was working on the day of Ms. Romero Leon's fall) testified that Wal-Mart ordinarily keeps mats in front of the wet wall to "prevent water from being on the floor":

> Q: [W]hy is it called a wet wall?
> A: Because those are the items that have to be wet to stay fresh.
> Q: And what does Wal-Mart do to prevent the wet wall items from dripping water onto the floor when a customer picks them up?
> A: We have produce bags over there, and we have mats that are on the floor.
> Q: Okay. So starting with the mats, where are the mats located in relation to the wet wall?
> A: Directly in front of the wet wall.
> Q: Okay. And how many mats are there?
> A: Three.
> Q: And how many mats were there at the time of Ms. Romero's accident?
> A: Three, I believe.
> Q: And that's the same as today?
> A: Yes.
> Q: And those mats are permanent, correct, according to [your colleague] Mr. Gonzalez?
> A: Yes.
> Q: So they don't move. They don't get picked up. They're there all the time?
> A: Yeah.
> Q: And those three mats are there why?
> A: Because it's a wet wall; to prevent water from being on the floor.
> Q: All right. And those mats run along the entire section of the wet wall, correct?
> A: Yeah.
> Q: So as long as product is getting wet, the mats travel as far as that section goes, correct?
> A: Yes.

Deposition of Vanessa Bryant ("Bryant Dep.") [ECF No. 30-1] at 17:1–18:8. One could gather from Vanessa Bryant's testimony that water regularly drips from the wet wall, and that this condition was foreseeable to Wal-Mart for two separate reasons:

> Q: But however far the wet wall travels, there are mats along the floor of that whole section? Yes?
> A: Yes.
> Q: And there were mats along the entire wet wall section when Ms. Romero had her fall, correct?
> A: Yes.
> Q: And the purpose of that is because you know that people grabbing produce are going to drip water onto the floor, correct?
> MS. RUSSOMANNO: Objection. Asked and answered. You can go ahead, Ms. Bryant.
> THE WITNESS: Because it sprays water periodically.
> Q: So I guess there's two reasons then. One is the wall sprays water periodically, right?
> A: Yeah.
> Q: And two is when a customer grabs a product, it's going to drip water, right?
> A: Yes.

*Id.* at 30:14–31:9.

And Yosby Gonzalez, Wal-Mart's "department manager [of] meat and produce," corroborated this testimony:

> Q: Now when you describe this wet wall, you said that water is used to keep the product fresh; is that accurate?
> A: Yes. Correct.
> Q: How does that work?
> A: It's like—they're like sprinkles, but that does not reach the floor. That's why the mats are there.
> Q: Well, if the water doesn't reach the floor, then why does there have to be mats?
> MS. RUSSOMANNO: Objection to form. You can go ahead, Mr. Gonzalez.
> THE WITNESS: The client comes, grabs the products, and *always*, you know, *spills some water*, like, the cilantro, the parsley.
> . . . .
> Q: So explain to me: The mat that's in front of the wet wall, what purpose does that serve? . . . .
> A: For safety.
> . . . .
> Q: So the mat is where the wet wall is because of the water that's there? . . . .
> A: Yes, that's where the fresh products are. Whenever the client grabs a product, so the water doesn't fall.
> Q: Okay. So when the water falls after the client grabs the product, it'll fall on the mat. Is that the purpose of the mat? . . . .
> A: Yes.

Deposition of Yosby Gonzalez ("Gonzalez Dep.") [ECF No. 30-3] at 5:25–6:2, 11:20–12:9, 13:21–14:1, 15:2–14 (emphases added).

9

This testimony—from Wal-Mart's own employees—supports the Plaintiffs' position that Wal-Mart "is supposed to place mats on the floor the length of the wet wall because Wal-Mart is aware that water can drip on the floor from the spray used to wet the vegetables and because customers drip water when they remove produce from the shelves." Plaintiffs' L.R. 56.1 Counter Statement to Wal-Mart's Statement of Material Facts (the "Counter Statement") [ECF No. 30] at 5. True, Wal-Mart's alleged policy of placing mats along the entirety of the wet wall doesn't "fix the standard of care for negligence." *Hostert v. Carnival Corp.*, 2024 WL 68292, at *13 (S.D. Fla. Jan. 5, 2024) (Altman, J.). But the fact that Wal-Mart has a policy of putting mats in front of the wet wall for safety purposes is circumstantial evidence that the hazard at issue occurred with regularity and was therefore foreseeable.[4]

Courts in our District routinely find similar testimony sufficient to establish constructive notice at summary judgment. *See, e.g.*, *Hernandez v. Walmart Stores, Inc.*, 2022 WL 1642814, at *6 (S.D. Fla. Apr. 28, 2022) (Damian, Mag. J.), *report and recommendation adopted*, 2022 WL 2974836 (S.D. Fla. July 27, 2022) (Altonaga, C.J.) ("[The store manager's] testimony that he was aware that another bunker in the same store and several (at least four) similar bunkers in other stores operated by Walmart had leaked water onto store floors on previous occasions is circumstantial evidence that the dangerous condition that allegedly caused [p]laintiff's injury occurred with regularity. Therefore, . . . [p]laintiff has presented sufficient evidence of Walmart's history of leaking bunkers from which a reasonable inference can be drawn that the condition happened with sufficient regularity such that Walmart should have known of the condition."); *Esteban-Garcia v. Wal-Mart Stores E. LP*, 2022 WL 16635816,

---

[4] Plus, Wal-Mart's "policies *can* be relevant to the fact-finder's determination of *what* the standard of care might be." *Hostert*, 2024 WL 68292, at *13. As we explained in a similar case: "The jury might find these policies useful in their efforts to outline the outer boundaries of the applicable standard of care. And, if they decide that the policies are, in salient ways, coextensive with the legal standard, then we think they could use the employees' failure to adhere to those policies as substantive evidence of negligence." *Thompson v. Wal-Mart Stores E., L.P.*, 2022 WL 59678, at *6 n.7 (S.D. Fla. Jan. 6, 2022) (Altman, J.).

10

at *3 (S.D. Fla. Nov. 2, 2022) (Martinez, J.) ("[T]estimony from Walmart employees that the freezers at the store leaked water onto the floors, combined with the repair records for the freezers showing issues with leaking and condensation support a reasonable inference that Walmart had constructive knowledge of the allegedly dangerous condition."); *Hughes v. Wal-Mart Stores E., LP*, 2023 WL 3172527, at *7 (S.D. Fla. May 1, 2023) (Bloom, J.) (concluding that "there [was] a genuine dispute of material fact as to constructive knowledge" where "it rained on the day of the incident[,] [p]laintiff testified that he observed water in the area where he fell," and a Wal-Mart employee testified "that water dripped from the carts onto the floor probably every time that it rained"). So too here. Vanessa Bryant's and Yosby Gonzalez's statements provide circumstantial evidence that Wal-Mart knew that the area around the wet wall could become dangerously wet—which is why (the Plaintiffs say) Wal-Mart usually requires employees to keep multiple mats in front of the wet wall.

Still resisting, Wal-Mart contends that Ms. Romero Leon's incident "was not foreseeable" because "there is no record evidence of other customers encountering comparable slip and fall incidents resulting from water spillage in the store's produce aisle by customers handling wet produce occurring with enough regularity to impute constructive notice upon Walmart." MSJ at 10. Because Ms. Romero Leon hasn't provided "evidence of prior similar incidents involving falls on the floor in the area resulting from water spillage in the store's produce aisle by customers handling wet produce," Wal-Mart continues, "she has failed to prove constructive notice on the basis that similar incidents occurred with regularity and were foreseeable." *Id.* at 11.

But, while identifying prior similar incidents is a common way of showing that a dangerous condition occurred with regularity (and was therefore foreseeable), it's not *the only way* to survive a motion for summary judgment. For example, in *Hernandez*, the court found that the store manager's "testimony that he was aware that another bunker in the same store and several . . . similar bunkers in other stores operated by Walmart had leaked water onto store floors on previous occasions . . . .

11

presented sufficient evidence to create a genuine issue of fact regarding whether Walmart had constructive knowledge of the dangerous condition[.]" 2022 WL 1642814, at *6. Similarly, in *Eddings*, the court held that the plaintiff had created a genuine dispute of material fact, *even without* evidence of other accidents:

> Eddings has also demonstrated a genuine dispute of material fact on whether "[t]he condition occurred with regularity and was therefore foreseeable" under § 768.0755(1)(b). Several Target employees testified that it was common for cashiers to give customers unopened bags from the rack if they wanted them and for customers to simply take unopened bags without asking . . . . The employees' testimony must be considered together with the surveillance video—which shows multiple customers either being handed bags or taking bags in exactly the manner described by Target's employees, and the photos—which show that an unopened bag somehow made its way onto the floor. Viewing this evidence in the light most favorable to Eddings, a reasonable jury could find that the phenomenon of unopened bags being distributed to customers and then ending up on the floor was a regularly occurring and foreseeable hazard.

*Eddings v. Target Corp.*, 2024 WL 414529, at *5–6 (M.D. Fla. Feb. 5, 2024) (Mizelle, J.). And, in *Marshall*, the court likewise explained that a plaintiff could survive summary judgment *without* evidence of prior falls:

> On the record before the [c]ourt, disputed questions of material fact exist as to whether the condition occurred with such regularity that it should have been foreseeable to Wal-Mart. In a light favorable to [p]laintiff as the non-moving party, the statements made by the female employee in the jean jacket to [p]laintiff and her sister that the cooler was leaking and that it was broken, coupled with the deposition testimony of Marissa West that the egg cooler was always leaking, create a disputed issue of material fact as to whether the condition existed with such regularity to be foreseeable . . . . As a genuine issue of material fact exists regarding Wal-Mart's constructive knowledge, Wal-Mart is not entitled to judgment in its favor as a matter of law.

*Marshall v. Wal-Mart Stores E. LP*, 2022 WL 2703412, at *5, 7 (M.D. Fla. July 12, 2022) (Honeywell, J.).

And this all makes sense. Florida law, after all, requires the plaintiff to show *only* that "[t]he *condition* occurred with regularity and was therefore foreseeable." FLA. STAT. § 768.0755(1) (emphasis added). The condition in our case was the accumulation of water from the wet wall onto the adjoining floor. The Florida statute thus does not require—and Florida plaintiffs need not prove—that, as a result of that condition, *accidents* occurred with regularity. *Cf.* ANTONIN SCALIA & BRYAN A. GARNER,

READING LAW: THE INTERPRETATION OF LEGAL TEXTS at 93 (2012) ("Nothing is to be added to what the text states or reasonably implies."). We therefore agree with our colleagues that, at the summary-judgment stage, a plaintiff can raise a genuine dispute of material fact as to whether a condition occurred with such regularity that it should have been foreseeable *without* identifying prior similar incidents.

Wal-Mart also argues, in its Reply, that the "Plaintiff's arguments that Wal-Mart failed to place sufficient mats or produce bags in the produce area of the subject premises . . . does not create a genuine issue of material fact" because the Plaintiffs are "impl[ying] that Wal-Mart engaged in a negligent mode of operation by failing to place additional mats along the wet wall" and "negligent mode of operation is no longer a valid cause of action under Florida law." Reply at 4. But we don't think the Plaintiff is trying to assert a new theory of negligence when she points out that Wal-Mart typically uses mats to sop up the liquid that drips off the wet wall. Instead, we think she's adduced circumstantial evidence that the complained-of dangerous condition 1) occurred with regularity and 2) was foreseeable. *See, e.g.*, *Castillo v. Dollar Tree Stores, Inc.*, 2021 WL 917947, at *1–2 (S.D. Fla. Mar. 10, 2021) (King, J.) (finding a genuine issue of material fact on the issue of notice where "the record [was] replete with evidence" that the defendant "knew of the regularity of its leaking roof, how often water would collect on its floor, and the history of a prior fall by another customer").

Given the evidence we have before us, we cannot say that there are *no* genuine issues of material fact on the question of constructive notice. While Wal-Mart may yet be able to show that it was not, in fact, on notice of the water on the floor near the wet wall on the day Ms. Romero Leon fell, it's our job—at this stage of the case—to "draw all factual inferences in favor of" the Plaintiffs, not Wal-Mart. *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1262 (11th Cir. 2020). And, as we've said, we

13

think a reasonable jury *could* find that Wal-Mart had constructive notice of the water on the floor where Ms. Romero Leon fell.[5]

\*   \*   \*

After careful review, therefore, we hereby **ORDER and ADJUDGE** that Wal-Mart's Motion for Summary Judgment [ECF No. 25] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on February 12, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

---

[5] Because we've denied Wal-Mart's Motion for Summary Judgment on Ms. Romero Leon's claim for negligence, we also reject Wal-Mart's argument that it's "entitled to final summary judgment on Carlos Seixas' claims for loss of consortium." MSJ at 11. As Wal-Mart recognizes, one spouse's "claim for loss of consortium is derivative in nature and wholly dependent on [the other spouse's] ability to recover." *Ibid.* (citing *Faulkner*, 367 So. 2d at 217).